# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSE E. MIRANDA-SANTIAGO, et al.,**
    **Plaintiffs**

    **v.**

                  **Civil No. 03-1962 (DRD)**

**PEPSI AMERICA de PUERTO RICO, et al.,**
    **Defendants**

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, José E. Miranda-Santiago, his wife, and their conjugal partnership filed a complaint on September 2, 2003, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (hereafter "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereafter "ADEA) and supplemental claims under Puerto Rico law (**Docket No. 1**). Miranda-Santiago alleges discriminatory employment practices during his employment by his employer Pepsi America de Puerto Rico, Pepsi Co., and Pepsi Americas.      The Defendants move for summary judgment arguing that because plaintiff Miranda failed to timely exhaust his administrative prerequisites his claims are time barred, that he cannot establish a *prima facie* case of age and disability discrimination and he cannot demonstrate that the Defendants' nondiscriminatory reasons for the actions at issue are a pretext (**Docket No. 15**).  Plaintiffs filed an opposition to the motion that was followed by the filing of a reply and a sur-reply (**Docket Nos. 22, 28, 33**).   The motion was referred for Report and Recommendation (**Docket No. 38, 39**).

## I.    Factual Background

Unless otherwise noted, the facts are derived from the complaint and statement of facts submitted by the parties in the motion for summary judgment and opposition thereto (**Docket Nos. 1, 15, 21**).  They are construed in the light most favorable to the non-moving party.

The defendant companies are corporations (collectively referred to as "Pepsi") engaged in the production and distribution of Pepsi-Cola products and other non-alcoholic beverages. At the time of the filing of the Complaint  José E. Miranda-Santiago (hereafter "Miranda") was 56 years of age.  He began working with Pepsi on October 31, 1968, and has held several positions with Pepsi, including that of pre-salesman, the position he currently holds.  Miranda has worked for Pepsi for approximately 34 years.

The Seafarers of Puerto Rico (hereafter SIU"), affiliated to the Seafarers International Union of North America, has been the exclusive representative for most of Pepsi's employees for the last five years, gaining that right by the National Labor Relations Board Certification No. 24 RC 6703.  At all relevant times, Miranda was represented by the SIU.

In 1997 some merchandising functions were incorporated into the pre-salesman position pursuant to the SIU's Collective Bargaining Agreement (hereafter "CBA").  In 2000, the pre-salesmen at Pepsi filed a grievance alleging that Pepsi had breached the previous (i.e. 1997-2001) CBA by requiring the pre-salesman to perform merchandising duties.   The arbitrator concluded that no breach had occurred, and the pre-salesmen did not seek judicial review of the arbitrator's decision.   Between 1997 and 2001, Miranda's salary was $240 per week and $.010 commission per box sold.  The SIU negotiated a CBA signed on February 4, 2002, and that expired on January 29, 2005.  Under the terms of that CBA, Miranda's salary was $212 per week and he received $.06 per box sold.  Following the implementation of the referenced CBA, and in February of 2002, Miranda's route was changed, and the account of a large client, Grande Supermarkets (hereafter "Grande") was removed.

Miranda suffers from chronic gout.  He keeps Pepsi informed when he is unable to work due to this condition.  Miranda alleges that his condition of chronic gout substantially affects and limits his daily life activities, but nonetheless he is able to perform the functions and duties of his employment with Pepsi.

Miranda alleges that due to his disability and his age, Pepsi began a campaign to harass and discriminate against him in an attempt to cause him to resign from his position.  It is

alleged that the  defendants' officers allegedly directed derogatory remarks to Miranda about his age.  For example; they would constantly ask Miranda about his retirement date and whether he was planning to leave Pepsi.  Other Pepsi officers constantly referred to Miranda as "viejito" (old man). Miranda also alleges that he was told he earned too much for the work he did being him so old.  Also, Miranda alleges the   supervisors wanted him to retire since "he was old and they were tired of him".  Also, Pepsi's officers would constantly ask Miranda about the amount of money he had in his retirement plan, asserting that at his age, they would have retired a long time ago.  Similar comments and harassment are alleged to have occurred regarding his disability.

Miranda alleges that he complained to his superiors about the harassment and discriminatory practices, but nothing was done to remedy the situation.  He also alleges that he requested reasonable accommodation, but that he was never provided with the same.  He was constantly threatened with dismissal and was denied several promotions despite having the seniority and qualifications.  He also alleges that younger individuals were assigned and/or promoted and/or hired to occupy those positions.

On January 14, 2003, Miranda filed an administrative charge with the EEOC claiming discrimination under the 2002-2005 CBA.  The charge was dismissed by the EEOC as untimely filed.

## II.    Motion for Summary Judgment

### A.  Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir. 2004). When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004).  While carrying out that task, the Court safely can

ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suarez v. Pueblo Int'l, Inc*., 229 F.3d 49, 53 (1st Cir. 2000) (quoting  *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

It is clearly settled that an issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; and as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vásquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998).  Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252.

### B.      EEOC: Timeliness

Pepsi moves for summary judgment on Miranda's ADA and ADEA claim on the basis that they time-barred because he failed to file his employment discrimination charge with the EEOC within the 300 day limitation period.  Miranda filed his EEOC charge on January 14, 2003.  It was dismissed by the EEOC as untimely filed.

The ADA and the ADEA require that prior to filing a discrimination claim an aggrieved individual must file an administrative charge with the EEOC "within 180 days after the alleged unlawful employment practice occurred," or within 300 days if the person is in a deferral jurisdiction such as Puerto Rico.  42 U.S.C. § 2000e-5(e)(1); *American Airlines, Inc. v. Cardoza-Rodríguez*, 133 F.3d 111, 122 (1st Cir. 1998). Under the statute, an "unlawful employment practice" applies "to a discrete act or single 'occurrence,' even when it has a

connection to other acts," *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 111 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 112.

Miranda contends that his claims were timely filed based upon the continuing violation doctrine inasmuch as his supervisors have continued to make discriminatory comments towards him, take derogatory actions against him, and have failed to provide him with a reasonable accommodation up through and including the date he responded to the Motion for Summary Judgment (**Docket No. 22**).

The continuing violation doctrine applies to hostile work environment claims, which "do not turn on single acts but on an aggregation of hostile acts extending over a period of time." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002).

In the case at bar, the evidence clearly points to the fact that at least as of  February 4, 2002, Miranda's route was changed and the Grande account was taken from him,  but Miranda did not file a complaint with the EEOC until January 14, 2003.  Accordingly, the removal of the account occurred 344 days prior to the filing of Miranda's EEOC complaint. Inasmuch as, the removal of the Grande account is a discrete act, Miranda did not timely file the  claim regarding the changing of his route. It also appears that he did not timely file his reasonable accommodation claim inasmuch as petitioner has been complaining since at least 2000 about the same.  Nonetheless, even if all of the claims were timely filed, as will be discussed, Miranda has not met his burden to show a *prima facie* case of age discrimination or has  a *prima facie* case of disability discrimination.  Accordingly, the undersigned finds no need to further  address Defendants' argument that these claims are time-barred.

### C.    ADEA Claim

Miranda claims that the following five events constitute evidence of age discrimination: (a) client roster was reduced from 18 to nine clients when he was assigned merchandising duties; (b) the Grande supermarkets were removed from his client list; (c) some younger pre-salesmen have more clients than he; (d) his supervisor told him to trim his white beard and

told him he was an old salesman; and (e) some merchandiser salute him saying "how are you old man"?

Under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* "it is unlawful for an employer. . .to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually play a role in the employer's decisionmaking process and have a determinative or motivating influence on the outcome. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993)).

When there is no direct evidence of discrimination, the plaintiff may prove his case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Rivera-Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 25 (1st Cir. 2001); *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (2000); *Feliciano v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir. 2000). It is the plaintiff's burden to establish a *prima facie* case of age discrimination and he "must adduce evidence that: (1)[he] was at least forty years of age; (2)[his] job performance met the employer's legitimate expectations; (3) the employer subjected [him] to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged." *González v. El Día, Inc.,* 304 F.3d 63, 68 (1st Cir. 2002); *see also Baralt v. Nationwide Mut. Ins. Co.,* 251 F.3d 10, 17 (1st Cir. 2001). This *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *González,* 304 F.3d at 69-70. After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." *Id.* at 70; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981).

If the employer is able to meet its burden, the presumption afforded to Plaintiff's *prima facie* case disappears and the Plaintiff must "adduce sufficient [credible] evidence that age was a motivating factor in the challenged employment action." *González,* 304 F.3d at 69. Plaintiff may meet his burden of proof by showing that the employer's articulated reason for the challenged employment action was pretextual, *Domínguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 n. 5 (1st Cir. 2000), from which the factfinder in turn may, but need not, infer the alleged discriminatory animus. *Fite v. Digital Equip. Corp.,* 232 F.3d 3, 7 (1st Cir. 2000) (citing *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133 (2000)).

Direct evidence of age discrimination is evidence that by itself shows a discriminatory animus. *Mandavilli v. Maldonado,* 38 F. Supp. 2d 180, 192-93 (D.P.R. 1999) (quoting *Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir. 1990)). Evidence is direct "when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Carribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000); *see also Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996) (stating that the remarks or comments must be linked to the adverse employment decision). But, "[s]tray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself do not constitute proof of direct evidence." *Adams v. Corporate Realty Servs., Inc.*, 190 F. Supp. 2d 272, 276 (D.P.R. 2002) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251 (1989)). For instance, direct evidence would be "an admission by the employer that it explicitly took [age] … into account in reaching an employment decision…." *Smith v. F.W. Morse & Co. Inc.*, 76 F.3d 413, 421 (1st Cir. 1996).

The comments Miranda testified to in his deposition consisted of his supervisor telling him to trim his "white beard" (**Docket No. 15**, Ex. F). In and of itself this is not evidence of discrimination, and is explained by Pepsi as evidence of concern regarding Miranda's work appearance. Also, some of the merchandisers greeted him by saying "how are you old man?" *Id.* The record does not reflect that these comments were made by decision makers. Indeed,

the evidence in the record demonstrates that Miranda has not provided direct evidence of an adverse employment action suffered by him that can be reasonably linked to an animus to discriminate against him by reason of his age.  While he claims that he has done so, in reality what has been provided to the Court are ageist remarks, none of which are linked comments to any of the adverse employment actions claimed by him to be based on his age, or that were involved in the decisional process. Therefore, these comments do not qualify as direct evidence of age discrimination; rather they appear to be stray remarks in the workplace unrelated to the decisional process.  Accordingly, Miranda must prove age discrimination through the *McDonnell Douglas* burden-shifting mechanism.[1]

> 1.     **Prima Facie Case**

Pepsi argues that Miranda has not established a *prima facie* case of age discrimination. More particularly, it argues that Miranda cannot show that he suffered an adverse employment action and cannot show that his age was not treated neutrally or that younger individuals were treated differently.

While considering the four factors of a primae facie case, it is determined that  Miranda clearly meets three of the elements. He is over forty years of age, he met his employer's legitimate employment expectations, and viewing the facts in the light most favorable to him,

---

[1]To the extent that Miranda may be claiming to be the victim of a hostile work environment, such a claim also fails.  To succeed in a hostile work environment claim, a plaintiff must prove,

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome [ageist] harassment; (3) that the harassment was based upon [age]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1ˢᵗ Cir. 2001) (citations omitted). A mere offensive utterance is not enough to create a hostile environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).  Similarly, "'simple teasing,' offhand comments, and isolated incidents … will not amount to [a change] 'in the terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotations omitted).

he was subjected to an adverse employment action in that his salary was reduced and his biggest account, the Grande supermarket, was removed from his client roster and he was not assigned a merchandiser to help him load and unload the product even though one was requested on numerous occasions.

Miranda's main evidence to defeat summary judgment is his sworn statement.  It is well established that "when an interested witness has given clear answers to unambiguous questions, he cannot create conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony changed." *Ramos v. Román*, 83 F.Supp. 2d 233, 247 (D.P.R. 2000) (citations omitted). Accordingly, the undersigned finds that the portion of Miranda's sworn statement that contradicts his deposition testimony is inadmissible.  More so, and although such a statement can be used in place of sworn statements and affidavits to oppose summary judgment, *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir. 1993), it must contain more than "simple conclusory averments." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 793 n.1 (1st Cir. 1992); *see also Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient.").

Miranda has failed to meet the fourth prong of a *prima facie* case, that is; to show that his age was a motivating factor or that younger individuals were treated differently.  Even assuming that the comments as alleged were made, the record reflects that the reduction in Miranda's salary and the changes in his job duties and route, were the result of union negotiations between Pepsi and SIU, Miranda's duly authorized representative. The undersigned is hard pressed to find a discriminatory act in a reduction of salary when that reduction was the result of labor negotiations between the employee and the employee's labor union, a union charged with safeguarding the employee's interests.  Further, the record

indicates that none of the pre-salesmen, including those younger than Miranda, have Grande as part of their client roster. More so, the evidence proffered against the individuals who allegedly made the discriminatory comments does not lead to the conclusion that said comments resulted in an increase in work duties or are of such a nature as to infer discriminatory intent.

Miranda has not met the elements of a *prima facie* case. Nonetheless, even if the employment expectation prong of the *prima facie* case was undecided, "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a *prima facie* case." *Fontanez Nuñez v. Janssen Ortho, LLC,* 360 F.Supp.2d 377, 395 (D.P.R. 2005) (quoting *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir. 1996); *see also Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir. 1985) ("The *prima facie* threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a *prima facie* showing of discrimination."). Accordingly, the undersigned will consider whether Pepsi establishes legitimate, nondiscriminatory reasons for the salary reduction, increased work duty claims and the elimination of his Grande Supermarkets as a client. *See: Alvarez-Cabrera v. Trataros Construction Inc.,* 184 F.Supp.2d 149 (D.P.R. 2002) (holding that the *prima facie* case and the employer's non-discriminatory reason are "irretrievably intertwined" where the employer asserts that it discharged the plaintiff because her job performance was not satisfactory, and thus it was necessary to examine Defendants' non-discriminatory reasons) (quoting *Lawrence v. Northrop Corp.,* 980 F.2d 66, 69 (1st Cir. 1992)).

## 2.    Proffered Non-Discriminatory Reason

A plaintiff may establish pretext by demonstrating "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradiction in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56

(1st Cir. 2000) (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)).  "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts.  The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as pretext." *Loeb v. Textron*, 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979); *see Resare v. Ratheon Co.*, 981 F.2d 32, 42 (1st Cir. 1992)

Pepsi has submitted as its legitimate, non-discriminatory reason for Miranda's reduction in salary and reassignment of duties – the need to gain a competitive edge. It appears from the record that at the time, Pepsi had determined; after conducting certain studies, that it needed to reduce its labor costs in several areas in order to effectively compete in the beverage market, specifically against its closer competitor Coca-Cola.  (**Docket No. 15**, Exs. A, H).  Consequently, Pepsi and the SIU agreed to reduce the compensation for various occupational qualifications. *Id.* at. Ex. A.  At the end of negotiations for the 2002-2005 CBA, the bargaining committee agreed that Pepsi's supermarket pre-salesmen would receive a base salary of $212 per week plus a $0.06 commission per box sold when in fact, between 1997 and 2001 it had been $240 per week plus $0.10 per box as commission.  *Id*.  at Exs. A, B. Additionally, the new CBA provided for the removal of supermarkets from the client roster list if the supermarket wished to process its orders electronically.  Evidence on record shows that Grande was one of the clients who chose to do just that. *Id.* at  Exs. A, B.

Miranda has failed to meet his burden of showing that the reasons adduced by Pepsi are a pretext for ageism.  Miranda has not controverted Pepsi's averment that the change in compensation and duties were brought about by the CBA negotiated between the employer and the union representing employees.  In fact, Miranda barely touches upon the effect, if any, of the CBA.  He simply claims that the changes brought about by the CBA did not substantially affect the terms of his compensation because of the volume of his sales.  Miranda argues, however, that the elimination of his top client is what prompted the abrupt change in his compensation by reducing his salary by almost 50%.  Of course, he maintains that when Pepsi took Grande Supermarkets from his client roster, it did so with the intention to

discriminate against him due to his age.  But once again, this is only his own conclusory and unsupported allegation without any evidence to sustain it.  Finally, Miranda claims the failure of Pepsi to assign a merchandiser to him as an adverse employment action motivated by his age. This assertion is controverted by the evidence.  Pepsi has about 40 merchandisers assigned to assist the pre-salesmen.  Miranda acknowledges that in two-thirds of the chain supermarkets assigned to him, there are several merchandisers who assist him in the merchandising duties  (**Docket No. 15**, Ex. F).  While Miranda complains that younger pre-salesmen were assigned merchandisers while he was denied one after requesting it, he presents nothing from which it could be inferred that the alleged refusal to assign him a merchandiser was age motivated.  Miranda has failed to show that any adverse employment action suffered by him was the result of a discriminatory animus on the part of Pepsi against him.  Indeed, he cannot demonstrate that the reasons advanced by Pepsi are a pretext for age discrimination.

Based upon the foregoing, the undersigned finds that the Defendants have articulated a legitimate nondiscriminatory reason for actions taken against Miranda.  Accordingly, it is RECOMMENDED that Pepsi's motion for summary judgment on the issue of age discrimination be GRANTED.

### D.    The American with Disabilities Act

Miranda has suffered from gout for the past 24 years.  He asserts that due to this condition and the effects it has upon him, he is substantially limited and/or cannot perform several activities of daily living, even with the medication he takes to control the condition. Hence, he argues that he must be considered disabled as it is defined under the ADA.  Pepsi moves for summary judgment on the basis that Miranda is not a qualified individual with a disability under the ADA.

The ADA prohibits certain types of discrimination in the workplace against an otherwise qualified individual with a disability.  42 U.S.C. §§ **12101** *et seq*. To establish a *prima facie* case of disability discrimination, under the ADA statutory-framework method,

Miranda must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is able to perform the essential functions of his job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. *Phelps v. Optima Health Inc.,* 251 F.3d 21, 24 (1st Cir. 2001); *Marcano-Rivera v. Pueblo Int'l,* 232 F.3d 245, 251 (1st Cir. 2000); *Garcia-Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 646 (1st Cir. 2000).

Absent direct evidence that the defendants harbored a discriminatory animus in taking an employment action, the plaintiff must turn to the burden-shifting model established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973); *Sánchez v. Western Auto of Puerto Rico,* 68 F.Supp.2d 93, 98 (D.P.R. 1999).  Under this framework, a plaintiff must first prove, by a preponderance of the evidence, that he  "(i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." *Jacques v. Clean-Up Group.,* 96 F.3d 506, 511 (1st Cir. 1996).  Upon this showing, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802; *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 153 (1st Cir. 1990).  The employer's burden is merely one of production; the plaintiff retains the burden of persuasion at all times. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 823 (1st Cir. 1991).  Once the employer has met the burden of production, the ultimate burden falls on plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from the employer's discriminatory animus. *Bishop v. Bell Atl. Corp.,* 299 F.3d 53 (1st Cir. 2002). It must always be kept in mind that in a disability discrimination case,  the plaintiff must establish the crucial element that he is disabled within the meaning of the Act. *See Cruz v. McAllister Bros., Inc*., 52 F.Supp.2d 269, 279 (D.P.R.1999) (citing *Arnold v. United Parcel Serv.*, *Inc*., 136 F.3d 854, 856-59 (1st Cir. 1998)).

### 1.    Disability

The term "disability" refers to a condition that has "substantially limited" a "major life activity."  29 C.F.R. § 1630.2; *Tardie v. Rehabilitation Hosp.*, 168 F.3d 538 (1st Cir. 1999).  In order for the plaintiff to meet the first element of a *prima facie* case that he had a "disability" within the meaning of the ADA, Miranda has the burden of showing that he (a) has a physical or mental impairment that substantially limits one or more of his major life activities; (b) has a record of such an impairment;  or (c) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2);  *Calero-Cerezo v. United States Dep't of Justice,* 355 F.3d 6,  20 (1st Cir. 2004).

To prove disability under the first prong, it must first be determined whether the plaintiff has a physical or mental impairment, and then whether the same substantially limits his ability to engage in major life activities. *See Santiago-Clemente v. Executive Airlines*, 7 F.Supp.2d 114, 117 (D.P.R.1998); *see also Rodríguez v. Loctite P.R. Inc.*, 967 F.Supp. 653, 659 (D.P.R.1997) ("An illness cannot in and of itself be considered an impairment. Only its symptoms and/or ramifications actually limit the inflicted person's ability to perform major life activities.").  The determination of whether an impairment substantially limits one or more of an individual's major life activities is guided by a three-step analysis considering whether: (1) the problem constitutes a physical impairment;  (2) the life activities upon which plaintiff relies constitute major life activities under the ADA;  and (3) the impairment substantially limited one or more of the major life activities. *Santiago-Clemente,* 213 F.3d at 30 (citing *Bragdon v. Abbott,* 524 U.S. 624, 631 (1998)).

Reading the record in the light most favorable to Miranda, he satisfies the first step of this analysis.  It is undisputed in the record that Miranda suffers from chronic gout and has had the condition for 24 years. Having so determined, the undersigned now turns to the issue of whether Miranda's chronic gout limits a "major life activity".   Pepsi argues that although Miranda has suffered from gout for more than 20 years, he testified at his deposition that in the past five years he has had only 15 to 20 attacks.  Miranda testified that when those attacks

occurred he was unable to work for two to three days.  Pepsi argues that the condition is a temporary one and it does not reach the level required by the ADA so as to be considered a substantial limitation as it is not permanent or long term. Pepsi points out that Miranda's condition improves with medical treatment.  Finally, Pepsi argues that Miranda fails to prove how his chronic gout limits his major life activities.

Actually, Miranda provides a litany of the ways in which gout affects him. He contends that he is unable to sleep, eat or concentrate and at times cannot move, walk or drive.  Also, he cannot take care of himself or his personal hygiene.  Nor can he relate to others and he has no energy or desire to do anything including sexual relations with his wife.  Also, he is physically limited in that he cannot move, push heavy objects, squat or bend.  Miranda also argues that the defendants have not proven that he is not substantially limited in the performance of his daily activities. As to this, the undersigned must point out that in an ADA case, the burden of disability lies with Miranda, the plaintiff, not with the defendant.

Major life activities are only those that are of central importance to daily life. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002).  Major life activities are defined as those "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. §. 1630.2; *Gelabert-Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 58 (1st Cir. 2001).  Also, sleeping has been recognized as a major life activity.  *See Criado v. IBM Corp.,* 145 F.3d 437, 442-43 (1st Cir.1998) (stating that sleeping is a major life activity).

Other than his deposition and sworn statement Miranda has not submitted one shred of evidence as to how his impairment substantially limits a major life activity.  To meet his legal burden Miranda must show that his impairment "substantially limited" the performance of the claimed major life activity. Whether an individual's alleged disability substantially limits one or more of his major life activities is evaluated on a case by case basis. *See* 29 U.S.C. § 706(2).  The fact of merely having an impairment does not make one disabled for purposes of the ADA. *Toyota Motor*, 534 U.S. at 195. Therefore, not only must the impairment affect a

major life activity, but it must also substantially limit it.  In particular, being substantially limited refers to being "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).  Other factors considered are: the nature and severity of the impairment, the length of time which the impairment is expected to continue, and whether or not the impairment can be characterized as a long-term condition.  *See* 29 C.F.R. § 1630.2(j)(2); *see also, Katz v. City Metal Co., Inc.*, 87 F.3d 26, 31 (1st Cir. 1996).

Plaintiff's deposition testimony does not support a finding of substantial limitation of any major life activity such as working. More so EEOC regulations state that an individual's significant restriction must be "compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(2).  Accordingly, Miranda must do more than merely assert he is unable to perform major life activities.

In this regard the record is completely devoid of any type of medical evidence including that of Miranda's treating physician.  There are no medical records, certificates, laboratory reports or functional capacity evaluations tending to show that Miranda's condition, while possibly constituting impairments, is of such nature as to substantially limit any of the major life activities asserted by him.  On the contrary, the evidence in the record, including his deposition testimony, demonstrate that none of his condition has ever limited him in any substantial manner.

Miranda testified that his bouts of gout are intermittent and when it occurs it lasts two to three days (**Docket No. 15**, Ex. F).  He takes medication to control this condition.  Miranda testified that with the gout sometimes he cannot walk.  He explained that there are times that he drags his feet, but he goes to work.  On other occasions he is limited in his grasping. When swelling occurs, Miranda asks for days off until the swelling recedes and is able to work again.  When this happens and Miranda experiences health problems, he is not required to

provide to the company a physician's certificate.  Miranda testified that in the past five years he has suffered from severe gout approximately 20 times.  He began taking different medication three or four years ago and with this medication the bouts are less frequent, and it has significantly helped him.

Miranda has the burden of showing that the impairment "substantially limits" the identified major life activity.  The EEOC defines "substantially limits" as follow:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i)-(ii).   In determining whether an impairment substantially limits a major life activity the following factors must also be considered: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2)(i)-(iii).  Miranda has simply failed to meet his burden.

Therefore, it is RECOMMENDED that the Motion for Summary judgment as to the Ada claim be GRANTED.

### 3.      Reasonable Accommodation

In the alternative, the Court addresses the issue of reasonable accommodation.  If Miranda was deemed to be a qualified individual with a disability within the meaning of the ADA, the ADA imposes upon the employer not only a prohibition against discrimination, but also, in appropriate circumstances, a positive obligation to make reasonable accommodation. 42 U.S.C. § 12112(a).  Absent disability of the employee, no obligations are triggered for the employer.  *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1st Cir. 1997).  Failing to make a reasonable accommodation for a qualified individual, however, falls under the definition of discrimination. 42 U.S.C. § 12112(b)(5)(A).

Under the ADA the term "reasonable accommodation" may include:

> (A) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices,  appropriate adjustment or modifications of examinations, training materials or policies . . . , and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

In order to establish a request for "reasonable accommodation," a plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances.  *Reed v. Lepage Bakeries, Inc.,* 244 F.3d 254, 259 (1ˢᵗ Cir. 2001).  If plaintiff succeeds in carrying this burden, the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears but rather that there are further costs to be considered, certain "devils in the details."  *Id.*

Miranda testified at his deposition that when he has had problems with gout he has asked  for assistance with merchandising.  Sometimes he has been accommodated and other times he has not (**Docket No. 15**, Ex. F).  However, Miranda explained and admitted that at times there are no merchandisers available for assistance.  When this happens and Miranda had requested to be assisted, there is no one that can be assigned the task.   If no one is sent, Miranda has to do the work.  When specifically questioned, Miranda explained and admitted that it is his understanding that when he has not been provided with assistance it is because there is no one to help him.   More so, Miranda testified that merchandisers are available for assistance in approximately one-half of the supermarkets he services.   Additionally, merchandisers are available for help on the weekends.

Miranda also testified that when he calls in sick with the gout he is allowed to take whatever time he needs to recover before returning to work.  He has never been reprimanded for taking time off due to his condition.  Miranda explained that he had the most problems

with assistance when he was supervised by a person identified as "Melissa", but she only supervised him for a short time, about eight to ten months.

Based on the evidence on record it is undisputed that on those occasions when Miranda was unable to work due to gout he is always allowed to remain off work until the condition improves. The record further reflects that when Miranda asks for assistance and merchandisers are available he is provided with their assistance. In order to prove the need for "reasonable accommodation," a plaintiff needs to show not only that the proposed accommodation would enable him to perform the essential functions of his job, but also that, at least on the face of things, it is feasible for the employer under the circumstances. *Reed v. Lepage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir. 2001). It is only feasible for the employer to provide assistance on demand if there are employees available at that time to provide such assistance. By Miranda's own admission, when he has not been provided with assistance it is because there is no one to help him. Quite simply, this does not rise to the level of a failure to accommodate claim.

Accordingly, Summary Judgment is RECOMMENDED as to this issue.

### D.    Retaliation

Miranda alleges that he was retaliated against as a result of his filing the EEOC charge. Pepsi argues that summary judgment is appropriate as to the issue inasmuch as there is no evidence of retaliation, more so in light of the fact that Miranda has failed to establish a *prima facie* of retaliation. A retaliation claim is covered by Title VII pursuant to 42 U.S.C. § 2000e-3(a). Said subsection provides in relevant part that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Under *McDonnell Douglas,* Miranda bears the initial burden of establishing a *prima*

*facie* case of discrimination.  411 U.S. at 802.  The elements of *prima facie* proof vary with the nature of the discrimination claim.  *Id.* at 803 n.13.  Under a retaliation claim, in order for a plaintiff to make a *prima facie* case he must show that : 1) he engaged in a protected conduct; 2) he suffered an adverse employment and 3) there is a causal connection between the protected conduct and the adverse employment action.  *See Hernández-Torres v. Intercontinental Trading, Inc*., 158 F.3d 43, 47 (1st Cir. 1998).

Miranda meets the first prong to make a *prima facie*  retaliation claim.  This occurred when he filed with the EEOC a discrimination claim against his employer.  There is no evidence, however, that Pepsi took any retaliatory measures against Miranda for that filing. In this regard Miranda merely alleges that the conduct he complains of, continued after the filing of his EEOC claim.  Notably, during his deposition Miranda testified that following the filing of his EEOC charge, "things have improved" and he has never been subjected to any disciplinary measures (**Docket No. 15**, Ex. F).  Miranda's testimony rebuts a finding of  a *prima facie* case of retaliation.  Therefore the claim fails.

Accordingly, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED as to the retaliation claim.

**III.    Supplemental State Claims**

As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice.  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995).  Here, the undersigned has recommended that summary judgment be granted in favor of Pepsi as to all of the federal claims brought against it by Miranda.  Therefore, there is no need to address the merits of the supplemental state claims brought by Miranda. Accordingly, it is RECOMMENDED that any supplemental state claims, be dismissed, without prejudice.

## IV.      Conclusion

It is therefore RECOMMENDED that Defendants' Motion for Summary Judgment (**Docket No. 15**) be **GRANTED,** and that the Court enter judgment in favor of Pepsi America de Puerto Rico, Pepsi Co., and Pepsi Americas as to all federal claims and that it dismiss without prejudice all supplemental state claims brought by Plaintiffs.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co*., 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

SO RECOMMENDED.

At San Juan, Puerto Rico, on this 11th day of August, 2005.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**